UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA )<br> )<br> )<br>             **Plaintiff,** )<br>       v. )<br> )<br>**$148,500 OF BLOCKED FUNDS IN** )<br>**THE NAME OF TRANS MULTI** )<br>**MECHANICS, CO., LTD., et al.** )<br> )<br>             **Defendants.** ) | Civil Action No. |

## UNITED STATES' VERIFIED COMPLAINT FOR FORFEITURE *IN REM*

**COMES NOW**, Plaintiff the United States of America, by and through the United States Attorney for the District of Columbia, brings this verified complaint for forfeiture in a civil action *in rem* against the defendant properties, namely: (1) $148,500 of funds in the name of Trans Multi Mechanics, Co., Ltd.; (2) $1,704.00 seized from Taiwanese national TSAI Hsien-Tai, also known as Alex Tsai / TSAI Hsein-Tai (hereinafter "Alex Tsai"); (3) 562.18 Euro ("EUR") seized from Alex Tsai; (4) 7,300.00 New Taiwanese dollars ("NTD") seized from Alex Tsai; and (5) 220.00 Hong Kong dollars ("HKD") seized from Alex Tsai;[1] and alleges as follows:

### NATURE OF ACTION AND THE DEFENDANT *IN REM*

1.  This in rem forfeiture action arises out of an investigation by the Federal Bureau of Investigation ("FBI"), of a scheme to launder funds into the United States as part of an illicit procurement network for the purpose of evading U.S. export controls and sanctions. Alex Tsai

---

[1] The defendant funds were blocked pursuant to Executive Order 13382. On May 23, 2016, the United States Attorney for the District of Columbia received a license from the Office of Foreign Assets Control, U.S. Treasury Department, to access the funds.

1

and his co-conspirators employed sophisticated evasion techniques and front companies in dealing with U.S. industry and the U.S. financial system to disguise the true nature of the conspirators' illicit business dealings, as well as to protect and promote the on-going illicit procurement scheme. Their actions evidence a long term conspiracy to illegally procure items for, or on behalf of, sanctioned entities, in violation of the International Emergency Economic Powers Act ("IEEPA") and the federal money laundering statute.

2. For the reasons set forth in more detail below, the United States seeks the seizure and forfeiture of the defendant properties. The defendant properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(C), as property constituted or derived from proceeds traceable to violations of IEEPA, codified at 50 U.S.C. § 1701 et seq. In addition, the defendant properties are subject to seizure and forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in, and traceable to violations of IEEPA, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A).

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355.

4. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the District of Columbia. The defendant $148,500 is currently in an account being maintained by Bank of New York Mellon. The remaining defendant properties are in the possession of the FBI. Alex Tsai and his coconspirators failed to seek licenses from the Office of Foreign Asset Controls ("OFAC"), which is located in Washington, D.C., for conducting transactions with these funds, in violation of U.S. law. Venue is also proper pursuant to 28 U.S.C. § 1355(b)(2), because at the time the

transactions and seizures occurred, the properties were part of a compound transaction that began in a foreign country.

## STATUTORY FRAMEWORK

  A.  The International Emergency Economic Powers Act

  5.  This civil forfeiture action relates to violations of the Regulations and Executive Orders issued pursuant to IEEPA, codified at 50 U.S.C. § 1701 *et seq.* IEEPA gives the President certain powers, defined in Section 1702, to deal with any threats with respect to which the President has declared a national emergency, and prescribes criminal penalties for violations thereunder. *See* 50 U.S.C. § 1705(a). A conspiracy to violate IEEPA is prohibited by 18 U.S.C. § 371.

  6.  According to Executive Order (hereinafter "E.O.") 13382, "Blocking Property of Weapons of Mass Destruction ("WMD") Proliferators and Their Supporters," all property and interests in property of those individuals and entities designated by E.O. 13382, which are in the United States, which hereafter come into the United States, or which are or hereafter come within the possession of a United States person are blocked. This includes a bar on United States dollars (hereinafter "USD") transactions, including through correspondent banking transactions occurring in whole or in part in the United States. Moreover, any currency, including foreign currency, on such person while they are in the United States is similarly automatically blocked. Additionally, any transaction within the United States which evades or avoids, has the purpose of evading or avoiding, or attempts to violate any of the prohibitions set forth in E.O. 13382 is prohibited.

  7.  IEEPA makes it a crime to willfully attempt to commit, conspire to commit, or aid and abet in the commission of any violation of E.O. 13382.

B.  Money Laundering Statute

8. Pursuant to 18 U.S.C. § 1956(h), it is a violation to conspire to violate Section 1956.

9. Pursuant to 18 U.S.C. § 1956(c)(7)(D), the term "specified unlawful activity," includes a violation of IEEPA.

10. Pursuant to 18 U.S.C. § 1956(a)(2)(A) (the international *promotional* money laundering statute) it is a violation to transport, transmit, and transfer, and attempting to transport, transmit, and transfer a monetary instrument or funds, inter alia, to a place in the United States from or through a place outside the United States with the intent to promote the carrying on of specified unlawful activity.

C.  Forfeiture Statute

11. Pursuant to 18 U.S.C. § 981(a)(1)(C), any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of IEEPA is subject to forfeiture.

12. Pursuant to 18 U.S.C. § 981(a)(1)(A), any property, real or personal, involved in a transaction or attempted transaction, in violation of 18 U.S.C. § 1956, or any property traceable to such property is subject to civil forfeiture. Forfeiture pursuant to this statute applies to a larger class of property than forfeiture under 18 U.S.C. § 981(a)(1)(C) because it applies to more than just the proceeds of the crime. Money laundering forfeiture is required for all property "involved in" the crime, which can include clean or legitimate money that is comingled with tainted money derived from illicit sources.

**FACTS GIVING RISE TO FORFEITURE**

A.  Background

13. On or around January 16, 2009, Taiwanese national, Alex Tsai, was designated by OFAC under E.O. 13382 due to his procurement for KOMID, the Democratic People's Republic

4

of Korea's (hereinafter "DPRK") primary arms dealer and main exporter of goods and equipment related to ballistic missiles and conventional weapons. The DPRK is commonly referred to as North Korea.

14. During the course of the investigation, the FBI determined, based on interviews of Alex Tsai in May 2013 and Rule 41 search warrant returns, that Alex Tsai exported goods on multiple occasions using his Taiwan-based companies including – among others – Trans Merits Co., Ltd. (hereinafter "Trans Merits"); Global Interface Incorporation (hereinafter "Global Interface"); Trans Multi Mechanics Co., Ltd. (hereinafter "Trans Multi Mechanics"); Fabrii Industrial Engineering Co., Ltd. (hereinafter "Fabrii Industrial Engineering"); Brillant Enterprise Co., Ltd. (hereinafter "Brillant Enterprise"); Long Mae Biochemical Co., Ltd.; and Jenq Wei Machinery Co., Ltd. Alex Tsai illegally exported goods, including U.S. origin items, under the guise of these companies and by using People's Republic of China (hereinafter "PRC")-based intermediary companies. As a result, in January 2009, Alex Tsai's wife, Lu-chi Tsai Su, Trans Merits, Trans Scientific Corp., and Global Interface were also designated by OFAC under E.O. 13382.

15. On or around May 10, 2013, OFAC announced the designation of Trans Multi Mechanics and Taiwanese national CHANG Wen-fu, aka Tony Chang (hereinafter "Tony Chang"), pursuant to E.O. 13382 for links to Alex Tsai. The designation announcement indicated that OFAC designated Trans Multi Mechanics and Tony Chang because Alex Tsai used Trans Multi Mechanics to procure and ship hundreds of thousands of USD worth of equipment for the benefit of North Korean parties.

16. On May 1, 2013, Alex Tsai was arrested in Tallinn, Estonia by the Estonian Internal Security Service based on a provisional arrest warrant. The complaint alleged that Alex

5

Tsai and his son, TSAI Yueh-Hsun, also known as Gary Tsai (hereinafter "Gary Tsai"), used Global Interface, Trans Merits, and Trans Multi Mechanics to illegally purchase and export sensitive machinery out of the United States.

17.  On October 3, 2013, the Estonian Internal Security Service transferred custody of Alex Tsai to the United States Government in Tallinn, Estonia, at which time Alex Tsai was arrested by the FBI and extradited to Chicago, Illinois to face federal criminal charges in the Northern District of Illinois.

18.  On October 10, 2014, Alex Tsai pled guilty to, and was convicted of, conspiring to violate IEEPA. As part of the plea, Alex Tsai admitted to concealing his and Trans Merits' involvement in the acquisition of a "Bryant center-hole grinder" by procuring the item using Trans Multi Mechanics. Alex Tsai engaged in this illegal subterfuge to conceal his role as a designated WMD proliferator in a transaction for a U.S. origin item purchased in USD. After completing his two-year term of incarceration, Alex Tsai was deported from the United States to Taiwan.

    B.    <u>Alex Tsai's Knowledge of the U.S. Department of the Treasury Designations</u>

        i.    Statements by Gary Tsai confirm Alex Tsai's knowledge of designation

19.  On or around January 19, 2009 -- approximately three days after the U.S. Department of the Treasury's designation of Alex Tsai, his wife, Trans Merits, Trans Scientific Corp., and Global Interface as WMD proliferators and/or their supporters – an e-mail account associated with Gary Tsai received an e-mail from the U.S. Department of the Treasury's e-mail account "subscriptions@subscriptions.treas.gov" with the subject line "Subscription Acknowledgement." The January 19, 2009, e-mail confirmed a subscription to the electronic list of designated entities.

20. During a May 9, 2013, interview, Alex Tsai acknowledged that Gary Tsai told Alex Tsai about the January 16, 2009 OFAC designations, and the resulting inability of Alex Tsai and his companies to do business with United States persons and United States companies.

21. As a result of Gary Tsai's informing Alex Tsai of the OFAC designation and the resulting restrictions against doing business with United States persons and United States companies, in September 2009, Alex Tsai changed the methods used to import a machine tool to Taiwan from the United States by listing Trans Multi Mechanics on U.S. export documents rather than Trans Merits. Alex Tsai used this front business to obfuscate his and Trans Merits' involvement in the transaction.

    ii. Alex Tsai's Surreptitious Use of USD Accounts in the Names of Unsanctioned Entities After He Was Designated Confirms His Knowledge of the Designations

      a. Alex Tsai created shell accounts in his daughter's name

22. During a May 2013 interview, Alex Tsai admitted that he set up financial accounts in the name of his daughter, TSAI Hui-Hsien, also known as Sandra Tsai (hereinafter "Sandra Tsai"). Alex Tsai set up these front accounts, in part, as a result of the OFAC restrictions against him and his companies

23. He also acknowledged sending $66,975.00 on October 21, 2009 and $49,975.00 on February 1, 2010 to Gary Tsai's U.S.-based Citibank USD account. Alex Tsai remitted these USD payments from a USD account held in Sandra Tsai's name at First Commercial Bank in Taiwan. This transaction in USD was in violation of Alex Tsai's designation.

24. During a May 1, 2013, interview, Sandra Tsai indicated she only had U.S.-based bank accounts. Sandra Tsai explained that she opened two accounts in her own name while living in Taiwan, and that other accounts were opened in her name by Alex Tsai and Lu-chi Tsai

7

Su. Sandra Tsai was not sure why Alex Tsai and Lu-chi Tsai Su opened multiple accounts in Sandra Tsai's name, except to say they did so in order to transfer money. Sandra Tsai did not believe anyone else could access the accounts except for Alex Tsai and Lu-chi Tsai Su. In order to open the accounts in Sandra Tsai's name, Alex Tsai and Lu-chi Tsai Su only needed Sandra Tsai's Taiwanese identification card and health insurance identification card.

      b.  Alex Tsai's use of other shell accounts

  25.  A comparison of records received from a number of U.S. financial institutions which acted as correspondent banks for foreign banks processing international wire transfers denominated in USD for entities associated with Alex Tsai indicated that prior to the designation, Alex Tsai primarily utilized offshore USD accounts at Taiwanese banks held in the names of Alex Tsai and Trans Merits to remit and receive USD wire transfers for business purposes. On rare occasions, Alex Tsai utilized offshore USD accounts at Taiwanese banks held in the names of Trans Multi Mechanics and Gary Tsai to remit USD wire transfers.

  26.  After the January 16, 2009, designations, Alex Tsai changed his practices to utilize offshore USD accounts in the names of various nominees at multiple banks to remit and receive USD wire transfers for business purposes.

  C.  <u>Blocking and Tracing of the $148,500 in Defendant Property</u>

  27.  On or around June 4, 2012, approximately three and a half years after Alex Tsai's designation, OFAC blocked a $148,500 wire directed by Alex Tsai. This wire originated from Trans Multi Mechanics' USD account at First Commercial Bank, Hong Kong, and was intended for Sandra Tsai's USD account at Taiwan Shin Kong Commercial Bank. The blocked $148,500.00 represents one of the defendant properties.

28. Through returns received from U.S. email providers in response to Rule 41 search warrants of email accounts associated with Alex Tsai, his businesses, and his employees, and interviews of Alex Tsai and Sandra Tsai, law enforcement obtained the below described evidence relevant to the blocked wire remittance and seized funds, which supports a request for the forfeiture of the funds to the United States.

29. Alex Tsai's businesses conducted both apparent legal as well as illegal activities, under U.S. law. Alex Tsai indicated his employees included - among others - HUANG Chien-hung, also known as Eric Huang (hereinafter "Eric Huang"), and CHEN Long-hsiang, also known as CHEN Longxiang. On several occasions during interviews of Alex Tsai between May 1, 2013, and May 9, 2013, Alex Tsai referred to or alluded to Tony Chang as one of Alex Tsai's employees.

30. On or about April 22, 2013, Alex Tsai was interviewed by foreign law enforcement. At that time, Alex Tsai was in possession of business cards which listed his name as associated with Fabrii Industrial Engineering and an e-mail address associated with Alex Tsai, among other contact information. Search warrant returns revealed that Alex Tsai previously caused an e-mail to be sent which included an attached copy of an image depicting Tony Chang's Fabrii Industrial Engineering business card. Tony Chang's Fabrii Industrial Engineering business card contained the same contact information and e-mail address as Alex Tsai's Fabrii Industrial Engineering business card.

31. Alex Tsai and his employees, among others, utilized four linked e-mail accounts ("Tsai Associated E-mail Accounts"). Alex Tsai would typically read and approve important e-mails sent out by his employees, particularly when related to the illicit procurement business.

32. Law enforcement subsequently obtained court-authorized search warrants for these four accounts. The search warrant returns contained correspondence and information on business transactions involving Trans Multi Mechanics and Fabrii Industrial Engineering, among others.

33. The investigation has revealed that Alex Tsai has illegally laundered funds into the United States and subsequently exported items to the government of the Syrian Arab Republic, commonly referred to as Syria, as well as North Korea. As detailed below, some of these illegal acts involved: the export of dual-use laboratory equipment and machine tools (i.e. items that have both civilian and military uses); the export of U.S. origin items post-OFAC designation; and USD transactions post-OFAC designation.

34. Many of the methods employed by Alex Tsai in making shipments to Syria were consistent with tactics that designated entities have adopted to circumvent designations imposed by OFAC, such as forming new, technically undesignated, companies to export shipments of goods, falsely using the names of unsanctioned companies to export shipments of goods, and establishing control over USD accounts surreptitiously set up in the names of non-designated nominees and front companies to receive USD payments.

      i.     First Illegal Payment and Shipment to Syria

35. Alex Tsai produced a copy of Trans Merits invoice number TMD-100810 dated August 10, 2010, for shipment of contract number TMC-180510. This shipment from Taiwan to Syria was for the laboratory equipment, some of which has dual-use capabilities and/or were U.S. origin items. The cost for Trans Merits invoice number TMD-100810 for shipment to Mechanical Systems was $63,814.00. This transaction in USD was in violation of Alex Tsai's designation.

36. The Taiwanese certificate of origin accompanying the shipment listed an address for Mechanical Systems on Aleppo Street in Damascus, Syria. A 2009 United Nations' investigation in response to a North Korean nuclear test revealed that the same Mechanical Systems in Syria was involved in incidents of non-compliance and/or suspected to be a front company of the Syrian Scientific Studies and Research Center (SSRC). The SSRC has been identified by UN member states as being involved in the acquisition of items related to the weapons of mass destruction and ballistic missile programs of the Syrian government.

    ii.    Second Illegal Payment and Shipment to Syria

37. On or around March 21, 2011, Alex Tsai and his subordinates engaged in an email discussion that revealed that Chinese Customer 1 was ready to complete a sale. Law enforcement believes that Chinese Customer 1 is an import and export company based in Shenyang, PRC.

38. Two documents were attached to this e-mail correspondence. One of the attachments contained Trans Multi Mechanics contract number TMC-220311 with Chinese Customer 1. The products were to be shipped to Lattakia port, a principal port city in Syria. The total amount of Trans Multi Mechanics contract number TMC-220311 was $32,505.00. Thirty percent of the total payment was wired in by the end of March 2011 after the contract was signed, and the outstanding seventy percent was to be paid before shipping. This transaction in USD was in violation of Alex Tsai's designation.

39. The second attachment contained a copy of a letter on Trans Merits letterhead which indicated Trans Multi Mechanics held a USD account and a Euro denominated account at First Commercial Bank, Hong Kong branch.

        iii.    Third Illegal Payment and Shipment to Syria – Sourcing of the $148,500 in Blocked Funds

40.    On or about May 28, 2012, Alex Tsai caused an e-mail to be sent to an e-mail account known to be associated with Chinese Customer 1. The e-mail contained an attached letter on Trans Merits letterhead to Chinese Customer 1 requesting outstanding payment of $148,505.00 for contract numbers TMC-121011 and TMC-260312 (related to the defendant property); $19,480.00 for contract number TMC-121011; and $128,440.00 for contract number TMC-260312.

41.    On or about June 18, 2012, Alex Tsai caused an e-mail to be sent with five attachments to an e-mail account associated with Chinese Customer 1. One attachment contained a copy of Fabrii Industrial Engineering invoice number TMD-120612 dated June 12, 2012, for shipment of contract numbers TMC-121011 and TCM-260312 to a Chinese freight forwarder of items, some of which have dual-use capabilities and/or were U.S. origin items.

42.    The total amount of this invoice was $212,920.00. The final sales price of contract numbers TMC-121011 and TCM-260312 were $34,480.00 and $178,440.00.

43.    Records reflect that $15,000.00 was paid as a deposit on October 23, 2011, for contract number TMC-121011. Records further reflect that $50,000.00 was paid as a deposit on March 28, 2012, for contract number TMC-2603012. These transactions in USD, including for U.S.-origin equipment, were in violation of Alex Tsai's designation.

44.    Another of the attachments to the June 18, 2012 e-mail contained a copy of Fabrii Industrial Engineering detailed packing list for invoice number TMD-120612 for the shipment of contract numbers TMC-121011 and TMC-260312.

45.    The investigation revealed that the goods in contract numbers TMC-121011 and TMC-260312 were for shipment to Mechanical Systems in Syria.

    iv. Blocking of the $148,500

  46. On or around June 4, 2012, OFAC blocked a $148,500 wire directed by Alex Tsai from Hong Kong to Taiwan, via a correspondent banking transaction through the United States. Specifically, this wire originated from Trans Multi Mechanics' USD account at First Commercial Bank, Hong Kong, and was intended for TSAI Hui-Hsien's USD account at Taiwan Shin Kong Commercial Bank. TSAI Hui-Hsien, also known as Sandra Tsai, is Alex Tsai's daughter. As detailed below, Alex Tsai opened shell accounts in Sandra Tsai's name, over which Alex Tsai maintained control. One reason Alex Tsai established such shell accounts was to sidestep the effect of the designation of barring his involvement in USD transactions.

  47. The blocked $148,500.00, which represents one of the defendant properties, is associated with the $148,505.00 that Chinese Customer 1 paid to Alex Tsai for the goods in contract numbers TMC-121011 and TMC-260312. The use of U.S. correspondent banks for Alex Tsai to receive payments for goods in USD is a violation of the prohibitions of E.O. 13382 imposed on Alex Tsai. Further, the goods in contract numbers TMC-121011 and TMC-260312 contained U.S.-origin items, an additional violation of the prohibitions of E.O. 13382 imposed on Alex Tsai.

  48. During a May 6, 2013 interview, Alex Tsai acknowledged that the Government of Taiwan notified Alex Tsai that his account at First Commercial Bank in Taiwan and Trans Merits' account at First Commercial Bank in Taiwan had been restricted from remitting in USD and Euros. Alex Tsai acknowledged having a remittance for approximately $148,000.00 blocked in 2012. He further admitted that he was having these funds sent from a Trans Multi Mechanics account to an account he was using, but which he held in Sandra Tsai's name. He recalled First Commercial Bank in Taiwan froze the account into which the remittance was being sent. He

further admitted that he did not receive the approximately $148,000.00 remittance for work he was doing in China at that time.

  D.  The FBI's Seizure of Currency from Alex Tsai

49. At the time of the FBI's arrest of Alex Tsai in Tallinn, Estonia and extradition to Chicago, Illinois on October 3, 2013, Alex Tsai had on his person hard currency including the following:

  1) $1,704.00;

  2) 562.18 EUR;

  3) 7,300.00 NTD; and

  4) 220.00 HKD.

50. Based on foreign-exchange rates published on May 31, 2016, on XE.com, EUR 562.18, NTD 7,300.00, and HKD 220.00 are worth approximately $625.94, $224.04, and $28.31 respectively. The hard currency found on Alex Tsai's person is presently in the custody of law enforcement. Pursuant to E.O. 13382, Alex Tsai may not be in possession of any currency, domestic or foreign, while in the United States. Moreover, a license from the OFAC would be needed to return these funds to Alex Tsai. These seized funds represent the remaining defendant properties.

## COUNT ONE -- FORFEITURE
(18 U.S.C. § 981(a)(1)(C))

51. The United States incorporates by reference the allegations set forth in Paragraphs 1 to 50 above as if fully set forth herein.

52. Alex Tsai, Trans Multi Mechanics, and others known and unknown acted individually and conspired together to conduct the above identified illegal procurements,

payments, and exports, in violation of IEEPA, specifically 50 U.S.C. § 1705 and the conspiracy statute, 18 U.S.C. § 371.

53.     As such, the defendant properties are subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(C), as property which constitutes or is derived from proceeds traceable to a conspiracy to violate IEEPA.

## COUNT TWO -- FORFEITURE
(18 U.S.C. § 981(a)(1)(A))

54.     The United States incorporates by reference the allegations set forth in Paragraphs 1 to 50 above as if fully set forth herein.

55.     Alex Tsai, Trans Multi Mechanics, and others known and unknown acted individually and conspired to transmit and transfer the $148,500 defendant property to a place inside the United States from or through a place outside the United States, with the intent to promote the carrying on of violations of the IEEPA, in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A).

56.     As such, that defendant property is subject to forfeiture to the United States, pursuant to 18 U.S.C. § 981(a)(1)(A), as property involved in transactions in violation of 18 U.S.C. §§ 1956(h), 1956(a)(2)(A), or as any property traceable to such property.

## **PRAYER FOR RELIEF**

**WHEREFORE**, the United States of America prays that a warrant for arrest *in rem* and notice issue on the defendant properties as described above; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring that the defendant property be forfeited to the United States of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

Respectfully submitted,

CHANNING D. PHILLIPS,
UNITED STATES ATTORNEY

*/s/   Zia M. Faruqui*
Zia M. Faruqui, D.C. Bar No. 494990
Deborah Curtis, CA. Bar No. 172208
Assistant United States Attorneys
555 4th Street, N.W.,
Washington, D.C.  20530
zia.faruqui@usdoj.gov
deborah.curtis4@usdoj.gov
202-252-7117 (Faruqui)
202-252-6920 (Curtis)

## **VERIFICATION**

I, Joseph Hugdahl, a Special Agent with the Federal Bureau of Investigation, declare under penalty of perjury, pursuant to 28 U.S.C. § 1746, that the foregoing Verified Complaint for Forfeiture *In Rem* is based upon reports and information known to me and/or furnished to me by other law enforcement agents and that everything represented herein is true and correct.

Executed on this __1st_ day of June, 2016.

*/s/ Joe Hugdahl*            _
Joseph Hugdahl
Special Agent
Federal Bureau of Investigation