UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Case No. 16-1029 (RJL) |
| | ) |
| $148,500 OF BLOCKED FUNDS IN THE | ) |
| NAME OF TRANS MULTI MECHANICS, | ) |
| CO., LTD., *et al.*, | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION
(March 29th, 2019) [Dkt. # 7]

Plaintiff the United States of America ("Government") brings this civil forfeiture action against $148,500 (the "Defendant Funds") in a blocked funds account at the Bank of New York Mellon ("Bank Mellon")—the alleged proceeds of Claimant Tsai Hsien-Tai's ("Claimant") business operations that were run through a U.S. bank account both in violation of the International Emergency Economic Powers Act ("IEEPA"), 50 U.S.C. § 1705, and the Weapons of Mass Destruction Proliferators Sanctions Regulations, 31 C.F.R. § 544.201, *et seq*. Currently before the Court is the Government's Motion for Summary Judgment ("Govt. Mot.") [Dkt. # 7], pursuant to Fed. R. Civ. P. 56. Upon review of the evidence in the record and the relevant casleaw, the Government's motion for summary judgment [Dkt. # 7], for the following reasons, will be **GRANTED**.

## BACKGROUND

On January 16, 2009, the U.S. Department of Treasury Office of Foreign Asset Control ("OFAC") designated Claimant, his wife, and two companies he controlled—Trans Merits Company Limited ("Trans Merits"), and Global Interface Company Limited ("Global Interface")—as Specially Designated Nationals ("SDNs") under Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters" for Claimant's dealings with a designated North Korean proliferator. Govt. Mot., Ex. C, Affidavit of FBI Special Agent Christopher Wong ("Wong Aff.") [Dkt. #7-6], ¶¶ 8, 19; *see also* Govt. Mot., Exs. 2, 6 [Dkt. ## 7-8, 7-12]. OFAC subsequently designated Trans Multi Mechanics—in whose name Defendant Funds were transferred in this case—in May 2013. Wong Aff. ¶ 25.

Between April and June of 2012,[1] the OFAC blocked $148,500 ("Defendant Funds") transferred from an account in Hong Kong in the name of Trans Multi Mechanics through a correspondent bank in the United States to a Taiwan account in the name of Claimant's daughter. Wong. Aff. ¶ 5, Govt. Mot., Ex. 1 [Dkt. # 7-7]. Notably, Claimant does not dispute that he "set up" both of these bank accounts,[2] and caused the transfer of

---

[1] While the parties dispute whether the transaction took place in April or June of 2012, the exact date is immaterial. That the transaction occurred *after* Claimant's 2009 SDN designation is undisputed.

[2] *See* Claimant Alex Tsai's Answer to the Government's Verified Complaint ("Answer") [Dkt. # 4] ¶ 4; Claimant's Answer to Plaintiff's First Set of Special Interrogatories ("Cl. Ans. Spec. Interr.") [Dkt. # 5] ¶¶ 2, 11–16; Govt. Mot., Ex. B, Claimant's Answer to Plaintiff's Supplemental Special Interrogatories ("Cl. Ans. Supp. Spec. Interr.") [Dkt. # 7-5] ¶¶ 28–31.

Defendant Funds. *See* Claimant Tsai Hsien Tsai's Verified Claim of Interest ("Verified Claim") [Dkt. # 3]; Claimant Opposition to Motion for Summary Judgment ("Cl. Opp.") [Dkt. # 9] ¶¶ 5, 6.[3] He does not dispute that he "ran" Trans Multi Mechanics, Cl. Opp. ¶ 13, and that the Defendant Funds are his money, Cl. Opp. Aff. Def. 5. Nor does Claimant dispute that he neither applied for, nor procured, an OFAC license to transfer these funds into or out of the United States. *See* Cl. Ans. Supp. Spec. Interr. ¶¶ 28–29.[4]

On May 1, 2013, Claimant was arrested in Estonia and subsequently extradited to the United States, where he was charged on multiple counts in the Northern District of Illinois. Wong. Aff. ¶¶ 35—36. On October 10, 2014, he pled guilty to one count of conspiracy to defraud the Government by interfering with or obstructing a lawful government function, 18 U.S.C. § 371—in this case the enforcement of Executive Order No. 13382 and the Weapons of Mass Destruction Proliferation Sanctions Regulations. *See generally* Govt. Mot., Ex. 3, Plea Agreement ("Plea Agmt.") [Dkt. # 7-9].[5]

Pursuant to the plea agreement, Claimant agreed to the following relevant facts underlying his criminal conduct: First, that "[b]eginning no later than in or about August 2009 and continuing until in or about August 2010, defendant [Tsai] and co-defendant Yueh-Hsun Tsai knowingly conspired with each other and with others to defraud…the

---

[3] Claimant insists that he did not transfer funds *to* the United States. Cl. Ans. Supp. Spec. Interr. ¶ 31.
[4] Claimant insists that he "did not see the need to seek U.S. approval." Cls. Ans. Supp. Spec. Interr. ¶ 29.
[5] Claimant "admits that he pled guilty and was convicted on October 10, 2014" for having "used Trans Multi Mechanics to acquire 'Bryan Center-hold grinder (sic).'" Answer ¶ 18.

United States government by interfering with and obstructing a lawful government function, that is, the enforcement of Executive Order 13382 and the WMD proliferators sanction regulations, by deceit, craft, trickery, and dishonest means." *Id.* at 7.

Second, "[a]fter learning of the OFAC designations, defendant…and others continued to conduct business through the U.S. financial and commercial systems for the benefit of defendant and Trans Merits." *Id.* at 7. That behavior included "knowingly and willfully evad[ing] the ban and prohibitions imposed on defendant and Trans Merits" by both exporting and importing goods to the United States and "concealing the involvement of defendant and Trans Merits in [such] transactions." *Id.* at 7–8. It also included "knowingly and willfully evad[ing] the U.S. government's efforts to block defendant and Trans Merits from accessing the U.S. financial and commercial systems [by] us[ing] the account of a third party to wire transfer funds that [defendant] owned and controlled to accounts that co-defendant Yueh-Hsun Tsai owned and controlled in the United States." *Id.* at 9–10.

The Government agreed not to use Claimant's statements against him in a criminal prosecution. *Id.* at 17 (noting that the plea agreement "concern[ed] criminal liability only"). However, the Government reserved its right to pursue "any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity." *Id.* It is undisputed that nothing in the plea agreement waived the

Government's right to seek civil forfeiture of assets.[6]

After serving his two-year sentence, Claimant was deported back to Taiwan, where he remains today. Wong. Aff. ¶ 55. Plaintiff the United States brought this action for civil forfeiture *in rem* against the Defendant Funds—$148,500 held in the name of Trans Multi Mechanics, Co., Ltd at Bank Mellon in New York—on June 1, 2016. *See* Complaint ("Compl.") [Dkt. # 1]. The Government alleges that these funds were transferred from a Trans Multi Mechanics account in Hong Kong through the United States on June 4, 2012, without an OFAC license. Govt. Mot. at 4, n. 2 (citing wire transfer records in Wong Aff. ¶¶ 4, 96–98). As such, the Government argues they are subject to seizure and forfeiture as properties constituted or derived from proceeds traceable to violations of IEEPA, in violation of 18 U.S.C. § 981(a)(1)(C), or as property involved in, and traceable to violations of the money laundering statute, in violation of 18 U.S.C. 981(a)(1)(A). *See id.* at 3.

Claimant entered a Verified Claim of Interest on July 15, 2016 [Dkt. # 3], and the parties thereafter engaged in two years of discovery on the source and nature of Defendant

---

[6] Indeed, under "generally accepted contract principles," it is clear that the plain meaning of the agreement did not preclude the kind of action brought here. *See U.S. v. One Parcel of Real Property*, 999 F.2d 1264, 1265 (8th Cir. 1993) (plea agreement provision in which government agreed that it would "not initiate future proceedings against the defendant[s] for any crimes which are within the scope of the investigation and the indictment in this case" did not include civil forfeiture). Nor does it matter that there was no forfeiture provision included in the plea agreement itself. *See Harris v. Allen*, 929 F.2d 560, 562 (10th Cir. 1991) ("Forfeiture statutes are primarily remedial, not criminal, in nature, and although it would have been permissible for Harris to request inclusion of the forfeiture in the plea agreement, its absence does not render Harris' plea less knowing or voluntary or constitute any breach of the agreement on the part of the state.").

Funds. Claimant challenges the Government's civil forfeiture claim on the grounds that he was an "innocent businessman" who "did not know, or have reason to know, that he was designated by OFAC under E.O. 13382" at the time the Defendant Funds were transferred. *See* Cl. Opp. Aff. Def. 4. For the following reasons, I find that Claimant fails to raise any issue of material fact, and will therefore **GRANT** the Government's Motion for Summary Judgment [Dkt. # 7].

## STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant summary judgment where there exists no genuine issue of material fact such that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.* And a dispute about a material fact is "genuine" only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* While a Court must draw all justifiable inferences in the nonmoving party's favor, a nonmoving party must nevertheless establish more than "the mere existence of a scintilla of evidence in support of [its] position." *Id.* at 252. As such, "'[c]onclusory allegations' and 'unsubstantiated speculation' do not create genuine issues of material fact." *Bonieskie v. Mukasey*, 540 F. Supp. 2d 190, 195 (D.D.C. 2008) (quoting *Fujitsu Ltd. v. Fed. Express Corp.*, 247 F.3d 424, 428 (2d Cir. 2001)); *see also Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) ("Accepting such conclusory allegations as true, therefore, would defeat the central purpose of the summary judgment device, which is to weed out

those cases insufficiently meritorious to warrant the expense of a jury trial."). If the nonmoving party presents facts that are contradicted by the record, such that no reasonable jury could believe them, "a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## ANALYSIS

The Government argues that it is entitled to summary judgment awarding civil forfeiture *in rem* of the Defendant Funds pursuant to 18 U.S.C. § 981(a)(1)(C), as property that constitutes or is derived from proceeds traceable to violations of IEEPA, and as property involved in money laundering transactions and attempted money laundering transactions, pursuant to 18 U.S.C. § 981(a)(1)(A). For the following reasons, the Court agrees that the Government has shown that no issue of material fact exists regarding its entitlement to forfeiture under § 981.

### I.   Legal Standard for Civil Forfeiture Under 18 U.S.C. § 981(a)(1)(A), (C)

Statutory *in rem* forfeiture—which derives from English common law—became part of our American legal tradition even "before the adoption of the Constitution." *Austin v. U.S.*, 509 U.S. 602, 613 (1993) (internal citation omitted). "Civil forfeiture actions are brought against property, not people [,] [but] [t]he owner of the property may intervene to protect his interest." *U.S. v. All Funds in Account Nos. 747.034/278, et al. in Banco Espanol de Credito, Spain*, 295 F.3d 23, 25 (D.C. Cir. 2002). Accordingly, in exercising its *in rem* jurisdiction, "the court has authority over the property…and may adjudicate claims of ownership." *Id.*

Congress has, by statute, declared several types of property subject to civil forfeiture, including property involved in money laundering transactions and attempted money laundering transactions, and "property that 'constitutes or is derived from proceeds traceable to' violations of…[section 206 of] the IEEPA," *In re 650 Fifth Avenue & Related Properties*, 830 F.3d 66, 87, 95 (2d Cir. 2016) (citing § 981(a)(1)(A) and (C)).[7] "The orders, regulations, and prohibitions referenced in section 206 are set forth in several Executive Orders and related ITRs promulgated by OFAC." *Id.* at 87. Relevant here, Executive Order 13382, "Blocking Property of Weapons of Mass Destruction Proliferators and Their Supporters," provides for designation of individuals as Specially Designated Nationals ("SDNs"). Wong Aff. ¶¶ 8, 19; *see also* Govt. Mot., Exs. 2, 6. Once designated as a SDN, an individual is *required* to procure an OFAC license if he wishes to transfer funds in U.S. currency. *See* Weapons of Mass Destruction Proliferators Sanctions Regulations, 31 C.F.R. § 544.201. Any transfer of such funds by a SDN without an OFAC license violates *both* the IEEPA and the federal money laundering statute. *See United States v. All Wire Transactions Involving Dandong Zhicheng Metallic Material Co.*, No. 17-mj-217, 2017 WL 3233062, at *1, 5 (D.D.C. May 22, 2017) (finding that even those acting *on behalf of* a SDN violate the IEEPA and the money laundering statute by

---

[7] Section 206 of the IEEPA provides for criminal penalties for *willful* violations of the IEEPA, 50 U.S.C. § 1705(c), and also provides for civil penalties for *any* violation of the IEEPA, 50 U.S.C. § 1705(b). Both criminal and civil violations of the IEEPA are subject to civil forfeiture.

conducting U.S. dollar wires without first obtaining a license from OFAC); *cf. In re 650 Fifth Ave. and Related Props.*, Civil No. 08-10934, 2013 WL 12335763, at *1 (S.D.N.Y. Aug. 29, 2013) ("In the *in rem* forfeiture action, the primary question is whether the proceeds of the defendant in rem properties were used to provide goods or services to Iran without the proper OFAC license, or were used in money laundering transactions.").

In civil forfeiture proceedings, the plaintiff (here, the Government) "bears the burden of proving, by a preponderance of the evidence, that the property [at issue] is subject to forfeiture." *Malladi Drugs & Pharmaceuticals, Ltd. v. Tandy*, 552 F.3d 885, 887 (D.C. Cir. 2009) (citing 18 U.S.C. § 983(c)(1)). Once the plaintiff meets that burden, "the burden shifts to the claimant to demonstrate by a preponderance of the evidence" that either "the property is not related to any illegal activities," or that "the claimant is an innocent owner of the property"—*i.e.*, that the claimant was not aware of the predicate illegal activity. *U.S. v. Funds From Prudential Securities*, 362 F. Supp. 2d 75, 81 (D.D.C. 2005) (citing 18 U.S.C. § 983(d)(2)(A)(i), (ii)); *see also In re 650 Fifth Ave. & Related Properties*, 830 F.3d at 86.[8] If a claimant fails to satisfy that burden, the seized property is subject to forfeiture.

---

[8] The Government is also required to comply with notice and substantive pleading requirements under Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. See Fed. R. Civ. P. Supp. R. G(2), (4). Claimant raises no dispute that both are satisfied here. The Complaint is verified; states the basis for subject matter jurisdiction, jurisdiction over the property, and venue; describes the property with reasonable particularity; and identifies the statute under which the forfeiture is sought. Fed. R. Civ. P. Supp. R. G(2)(a)–(c), (e). As to the substantive pleading requirement, the Government has, for the reasons described in more detail below, *infra* at 10–12, given a sufficiently detailed factual basis "to support a reasonable belief that the government will be able to meet its burden of proof at trial." Fed. R. Civ. P. Supp. R. G(2)(f).

## II. The Government Has Presented Substantial Evidence That Defendant Funds Are Subject to Forfeiture

Here, the Government's allegations establish by a preponderance of the evidence that Defendant Funds "constitute[d]" or were "derived from" violations of Section 206 of the IEEPA. 18 U.S.C. § 981(a)(1)(C). The Government's allegations also establish that the Defendant Funds are subject to forfeiture under 18 U.S.C. § 981(a)(1)(A), as derived from proceeds traceable to violations of the anti-money laundering statute. While the Government can likely prove that the underlying transactions for Defendant Funds were *themselves* in violation of the IEEPA and the federal money laundering statute,[9] it does not need to do so here. All the Government must prove is that Defendant Funds were transferred by a SDN without an OFAC license. *See All Wire Transactions*, 2017 WL 3233062, at *5 (conducting U.S. dollar wires without first obtaining a license from OFAC is a violation of the IEEPA and the anti-money laundering statute).

To meet its burden, the Government must put forward evidence that Claimant—a SDN—transferred funds through a U.S. bank account without applying for or receiving an OFAC license.[10] Here, Claimant flatly admits that he never applied for an OFAC license

---

[9] The $148,500 in blocked funds were allegedly proceeds of Claimant's "illegal sale of machine tools to a company in Syria using a then-undesignated front company, Trans Multi Mechanics." Govt. Mot. at 8–9 (citing Wong Aff. ¶¶ 86–98; Govt. Mot. Exs. 27–32 [Dkt. ## 7-33 to 7-38]); *see also* Govt. Mot. at 4 (citing evidence in Wong Aff. ¶¶ 69–85 of Claimant's "long-standing conspiracy with persons known and unknown to evade the Weapons of Mass Destruction Proliferations Sanctions Regulations").

[10] The Government has submitted as evidence Claimant's own statements in the form of the plea agreement proffer and answers to special interrogatories, *see* Plea Agmt., Cl. Ans. Spec. Interr., Cl. Ans. Supp. Spec. Interr., an affidavit by FBI Special Agent Christopher

to transfer the funds at issue in the instant case. *See* Cl. Ans. Supp. Spec. Interr. ¶¶ 28–29. That Claimant owned the company in question—Trans Multi Mechanics—and controlled both the originating bank account in Hong Kong and the destination bank account in Taiwan, is also undisputed. *See* Govt. Mot. at 7 (citing Cl. Ans. Spec. Interr. ¶¶ 28–29). What remains is for the Government to prove Claimant's designation as a SDN and to explain how the Defendant Funds were transferred in violation of his SDN status. It can easily do so here.

The Government has presented ample evidence that OFAC designated Claimant, his wife, and two companies he controlled—Trans Merits and Global Interface—as SDNs in January 2009, *see* Wong Aff. ¶¶ 8, 19; Govt. Mot., Exs. 2, 6, requiring him to obtain an OFAC license for *any transactions* conducted in whole *or in part* in the United States, including transactions in U.S. dollars. *See Holy Land Foundation for Relief and Development v. Ashcroft*, 219 F. Supp. 2d 57, 67 (D.C. Cir. 2002) ("[T]he plain text of the IEEPA authorizes the blocking of property in which the designated foreign national or country has '*any interest*.'") (citing IEEPA, 50 U.S.C. § 1702(a)(1)(B)) (emphasis added).[11] The simple fact "[t]hat OFAC blocked [this] transaction because it concluded

---

Wong, *see* Wong. Aff., and finally invoices and packing lists related to contracts between Claimant and a Chinese contact for the shipment of machine tools to Syria, emails relating to those contracts, Claimant's request for payment of $148,505 for those contract, and a record of a blocked $148,500 wire transaction seven days after that request for payment. *See* Govt. Mot. at 8–9 (citing Wong Aff. ¶¶ 86-98, Exs. 27–32).

[11] That included transactions conducted on the part of any other companies that Claimant controlled.

that an SDN had an interest in it, and that OFAC subsequently designated [Trans Multi Mechanics] as [an] SDN[ ], add[s] additional weight to this conclusion." *United States v. $6,999,925.00 of Funds Associated with Velmur Management Pte, Ltd.*, 2019 WL 1317336, at *6 (D.D.C. March 22, 2019); *see also Consarc Corp. v. Iraqi Ministry*, 27 F.3d 695, 702 (D.C. Cir. 1994) ("OFAC[ ] ... receives an even greater degree of deference than the *Chevron* standard"). Even before Trans Multi Mechanics was designated, the Government's evidence shows that Claimant would use Trans Multi Mechanics to process wire transfers for Trans Merits business transactions in an attempt to evade SDN sanctions for the latter. Wong Aff. ¶ 67. The Government points to Claimant's plea agreement, which states that he "continued to conduct business through the U.S. financial and commercial systems," for his own benefit and the benefit of Trans Merits, even "[a]fter learning of the OFAC designations." Plea Agmt. at 7.[12] Other record evidence strongly supports this conclusion. *See, e.g.*, Govt. Mot. at 8–9.

Therefore, after reviewing the Government's motion and supporting exhibits, I easily conclude that it has met its burden to show, by a preponderance of the evidence, that the Defendant Funds are the proceeds of or are otherwise traceable to money laundering and violations of the IEEPA.

---

[12] Claimant's guilty plea can be considered as evidence supporting the plaintiff's motion for summary judgment. *See, e.g., United States v. Approximately $1.67 Million in U.S. Currency, Stock, & Other Valuable Assets*, 513 F.3d 991, 999 (9th Cir. 2008) (considering Claimant's prior convictions in affirming District Court's grant of summary judgment for forfeiture of property related to those convictions).

### III. Claimant Cannot Show That He Was an Innocent Owner or That the Funds Were Legitimate Income

Having established that the Government has met its initial burden, the burden now shifts to Claimant to set forth specific facts showing that the Defendant Funds were either legitimate income or that he was an innocent owner of illegitimate funds.[13] Claimant can do neither. Even affording Claimant the "latitude" which courts generally allow to *pro se* litigants, *Moore v. Agency for Int'l Dev.*, 994 F.2d 874, 876 (D.C. Cir. 1993), he must still establish some material fact preventing judgment as a matter of law. And here, Claimant offers no specific facts or supporting evidence showing the existence of a genuine issue for trial. Fed. R. Civ. P. 56(c)(1); *Scott*, 550 U.S. at 380.

First, Claimant admits many of the material facts supporting forfeiture in this case. He admits his ownership of Trans Multi Mechanics, that he caused the Defendant Funds to be transferred, and that he never applied for or procured an OFAC license. As the Government points out, he also admits that the 2009 OFAC designations of himself, his wife, Trans Merits, and Global Interface impacted his business "tremendously," preventing him from doing business anywhere but mainland China, Cl. Ans. Supp. Spec. Interr. ¶ 5, and that "that in 2011, the Tawianese government notified him that he was prohibited from remitting dollars and euros." Cl. Opp. ¶ 26. And, of course, Claimant previously admitted to knowledge of his SDN status as part of his 2014 guilty plea. Plea Agmt. at 7–8.[14]

---

[13] Notably, the Claimant still retains the "innocent owner" defense regardless of whether willfulness is a requirement of the underlying charge. 18 U.S.C. § 983(d)(2)(A)(i), (ii).

[14] I need not reach the issue of whether Claimant is judicially estopped from contradicting

13

Despite this, Claimant insists that he "did not know, or have reason to know, that he was designated by OFAC under E.O. 13382 before the alleged commission." Answer at 9 (5th Affirmative Defense); Cl. Opp. Aff. Def. 4. At best, these statements are conclusory. *See Anderson*, 477 U.S. at 249–50 ("If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.") (internal citations omitted). In reality, his claims of innocence are so "blatantly contracdicted by the record…that no reasonable jury could believe [them.]" *Scott*, 550 U.S. at 380.[15]

Finally, although Claimant disputes the source of these funds, that alone does not create an issue of material fact.[16] As a SDN, it is enough that Claimant owned and controlled Trans Multi Mechanics, and transferred funds through a U.S. account without an OFAC license. Both of those facts are undisputed. As such, I find that no reasonable juror could find that Claimant was an innocent owner or that Defendant Funds come from legitimate means.

---

his guilty plea to find that he has failed to meet his burden. *See* Govt. Reply at 4–5.

[15] Claimant's argument that he did not find out about the designation of Trans Multi Mechanics until 2013, while the transfer happened in 2012, is a red herring. Claimant himself was designated as a SDN, so transferring money through the United States was illegal regardless of the entity he employed for that purpose.

[16] This is not a case in which a claimant is transferring funds on behalf of SDNs, *see generally, e.g., Funds Associated With Velmur Mgmt*, 2019 WL 1317336 (March 22, 2019 D.D.C.). Claimant is himself a SDN !

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the Government's Motion for Summary Judgment [Dkt. # 7]. An Order consistent with this decision accompanies this Memorandum Opinion.

_____
RICHARD J. LEON
United States District Judge